# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT

I, Dillon J. Torno, being duly sworn, depose and state as follows:

### Introduction and Agent Background

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since March 2020. I am currently assigned to the FBI's New Hampshire Major Offender Task Force ("MOTF") where I am tasked with investigating violent criminals, gang members, and significant narcotics traffickers throughout the state. As part of the MOTF, I work alongside law enforcement officers from various local, state, and federal agencies throughout the state of New Hampshire. I am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

2. Throughout my career, I have led and/or been involved with investigations of drug distribution, violent crimes, and other offenses. My investigations have included the use of the following investigative techniques: physical surveillance; handling of cooperating sources and witnesses; exploitation of cellular, social media, and Internet Protocol ("IP") based communications data; execution of search and seizure warrants; wire and electronic interception of communications; and the execution of arrest warrants. Based on my training, experience, and information provided to me by other law enforcement officers, I am familiar with the modus operandi used by individuals engaged in the commission of various criminal offenses, including the unlawful distribution of controlled substances and firearms.

3. This affidavit is submitted in support of a criminal complaint charging **STEVEN RIDGEWAY,** date of birth ▮▮▮▮ 1974, with violating 21 U.S.C. § 841(a)(1) – Distribution of a Controlled Substance, specifically, methamphetamine, a Schedule II controlled substance, and 18 U.S.C. § 922(g)(1) – Prohibited Person in Possession of a Firearm.

4. The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, information received from other law enforcement officers, and physical surveillance conducted in connection with persons and places

mentioned in this affidavit. This affidavit is intended to show there is probable cause for the requested complaint and does not set forth the entirety of my knowledge about this matter.

### STATUTORY AUTHORITY

5.      Title 21, United States Code, Section 841(a)(1) provides, in pertinent part, that it is "unlawful for any person knowingly or intentionally to . . . possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Methamphetamine is a Schedule II controlled substance.

6.      Title 18, United States Code, Section 922(g)(1) provides, in pertinent part, that is unlawful for a person convicted of a crime punishable by over one year of imprisonment "to ship, transport, possess or receive any firearm or ammunition…"

### PROBABLE CAUSE

7.      In May of 2023, the NHMOTF developed a cooperating witness ("CW"), who identified Steven Ridgeway ("Ridgeway") as a large distributor of methamphetamine in the Belknap County, New Hampshire area. CW cooperated with the FBI for monetary compensation and had no active or pending criminal charges. CW's criminal history includes convictions for theft (2013), violations of the Controlled Drugs Act (2013), and violation of terms of probation or parole (2015). CW knew Ridgeway to live at the apartment building located at ▮▮ Union Avenue, Laconia, New Hampshire. Investigators began using CW to make controlled purchases of methamphetamine and a firearm from Ridgeway. After the controlled purchases described in this affidavit, CW reported an assault to law enforcement, then later recanted the allegation to law enforcement. The CW was not charged with false report by law enforcement, and, after recanting, the CW reaffirmed the initial assault report. The FBI has since ceased utilizing CW.

8. On July 5, 2023, investigators met with CW at a pre-determined location ("PDL") to conduct a controlled purchase of two ounces of methamphetamine from Ridgeway for $800. Upon meeting investigators, CW stated that on a phone call that morning, Ridgeway directed the CW to meet him at Melissa Pelletier's ("Pelletier") residence, ▮ Overland Street, Laconia, New Hampshire for the drug sale. Pelletier was known to the CW to be Ridgeway's associate. Department of Motor Vehicle records reflected that Pelletier listed ▮ Overland Street as her address. Investigators searched CW and their vehicle for weapons, contraband, or unexplained currency with negative results. Investigators provided CW with a surreptitious audio and video recording device, as well as an audio transmitter device, to monitor and record the transaction. CW was given $800 in Official Agency Funds ("OAF") to purchase the drugs.

9. At 11:53 a.m., investigators surveilled CW driving to Pelletier's home from the PDL. Investigators saw CW leave Pelletier's home at 11:55 am. Approximately one minute later, CW told investigators that Ridgeway called stating that he did not give CW enough "product," which I understood to be methamphetamine. Investigators observed CW return to Pelletier's house and depart two minutes later. Investigators followed CW back to the PDL, where CW relinquished the audio/video recording equipment, the audio transmitter, and four (4) baggies containing a crystalized substance. Investigators again searched the CW and CW's vehicle for weapons, contraband, or unexplained currency and found none. The Drug Enforcement Administration ("DEA") Laboratory tested the substance, which tested positive for methamphetamine.

10. During a debrief of the controlled buy, CW stated that they met Ridgeway inside the door of Pelletier's residence, where Ridgeway gave CW two (2) baggies of suspected methamphetamine in exchange for $800. CW stated that after they left, Ridgeway called stating that the bags were "short," he had let "her weigh it out," and CW should return for the rest of the

product. CW then returned to Pelletier's residence, where Ridgeway gave them an additional two (2) baggies of methamphetamine in the driveway. Investigators reviewed the recording of the controlled buy, which corroborated CW's statements.

11. On July 24, 2023, at the direction of investigators, CW arranged a purchase of methamphetamine and a firearm from Ridgeway. CW told investigators that CW spoke to Ridgeway in person on July 11, 2023, and Ridgeway informed CW that he had a firearm for sale. On July 18, Ridgeway sent a text message to CW containing pictures of a Glock semi-automatic pistol and a gun case. On July 24, CW sent a text message Ridgeway stating, "Hey so I can meet up finally for that tomorrow are you able to see me in the am." Ridgeway replied, "Yeah I can meet up with you tomorrow morning we can do that." CW responded, "Okay thank you 19 and 5 for other thing." CW also stated, "Just wanted to make sure you were gonna be good for all that cuz ive had their money for a while hahah lol don't wanna say they have to wait." Ridgeway replied, "Yea I got you what are they expecting." CW responded with, "I dk lol I was wondering what you were gonna do for that." Ridgeway replied, "probably like five to six tips." Based on my training and experience, I believe that Ridgeway was referring to "ounces" of methamphetamine when it used the term "tips." The photos and text messages referenced in this paragraph were shown to and viewed by investigators, therefore corroborating the CW's statement.

12. On July 25, 2023, at the direction of investigators, CW texted Ridgeway, "hey." Ridgeway replied, "Hey call me back I'm sorry I didn't fall asleep this morning so I just woke up but I got you just waiting on you now." CW then met with investigators at a PDL. At approximately 10:43 a.m., at the direction and in the presence of investigators, CW called Ridgeway who told CW that he was at "Melissa's." Investigators searched CW and their vehicle for weapons, contraband, or unexplained currency with negative results. Investigators provided CW with a surreptitious audio and video recording device, as well as an audio transmitter device, to monitor and record the transaction. CW was provided with $2,400 in OAF. Investigators then followed CW to Pelletier's home and observed Ridgeway enter the passenger side of CW's car. CW and Ridgeway drove to a vehicle known to be used by Ridgeway, which was parked at a nearby residence. CW sent text messages to investigators informing them that Ridgeway already provided the firearm, but he was leaving to get the gun case and would reconnect with CW at the CVS in Laconia. At approximately 11:24 a.m., Ridgeway was observed operating his vehicle and investigators followed him to his house and watched him enter.

13. About ten minutes later, investigators observed Ridgeway depart his residence, arrive at the CVS, and enter CW's car. After a few minutes, Ridgeway left CW's car, and CW left the parking lot. Investigators followed CW to the PDL, where CW told investigators that the firearm, a Glock 43 nine-millimeter pistol, was in the backseat of CW's car in a holster. This firearm was relinquished to investigators. This firearm bears serial number BZEH358. CW also relinquished the Glock firearm gun case. Inside the gun case was a large plastic bag containing a white crystal-like substance. Investigators again searched the CW and CW's vehicle for weapons, contraband, or unexplained currency and found none. The suspected methamphetamine was tested at the DEA Drug Laboratory and was confirmed to be methamphetamine.

14.     In 2016, Ridgeway was convicted of a felony for a violation of New Hampshire RSA 159:3, I Felon in Possession of a Dangerous Weapon. This offense is punishable by over one year of imprisonment.

15.     Subsequently photographs of the firearm was examined by Alcohol, Tobacco, and Firearm Agent Pat Dawley, who opined that the firearm had traveled through interstate commerce by virtue of its venue of manufacture.

16.     During a debrief of the transaction, CW said that after Ridgeway entered CW's car at Pelletier's house, Ridgeway removed a firearm from his waistband and put it on the car's floorboard. CW stated that they then drove Ridgeway to pick up his car so that Ridgeway could get the gun case for CW. CW said that CW and Ridgeway agreed to meet at the CVS, and they did so shortly thereafter. CW said that Ridgeway got into CW's car and gave CW the gun case, which contained the methamphetamine. CW said that Ridgeway talked about how both he and the CW were convicted felons. CW moved the firearm to the floor of the backseat as that made them feel more comfortable. Investigators reviewed the audio/video recording which corroborated CW's statement.

**CONCLUSION**

17.     Based upon the information set forth above, I submit that there is probable cause to believe that Steven Ridgeway committed the offenses of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a prohibited person, in violation of 18 USC § 922(g)(1).

Respectfully submitted,

/s/ Dillon J. Torno
Dillon J. Torno, Special Agent
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: Nov 21, 2023

_____
TALESHA L. SAINT-MARC
UNITED STATES MAGISTRATE JUDGE